NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHN NUNNERY, : | |
| : | |
| Plaintiff, : | |
| v. : | CIVIL ACTION NO. 07-2091 (JLL) |
| : | |
| SALESIAN MISSIONS, INC., : | OPINION |
| SALESIAN SOCIETY, SALESIAN : | |
| SOCIETY, PROVINCE OF ST. PHILIP : | |
| THE APOSTLE, INC., SALESIAN : | |
| MISSIONS, INC. T/A DON BOSCO : | |
| PREPATORY HIGH SCHOOL; : | |
| REV. FRANK NUGENT, : | |
| : | |
| Defendants. : | |

**LINARES**, District Judge.

Presently before the Court is Defendants Salesian Missions, Inc., Salesian Society, Salesian Society - Province of St. Philip the Apostle, Inc., Salesian Missions, Inc. T/A Don Bosco Prepatory High School (the "Salesian Defendants"), and Rev. Frank Nugent's (collectively with the Salesian Defendants, the "Defendants") motion to dismiss Plaintiff John Nunnery's complaint (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court has reviewed the submissions in support of and in opposition to the motion and renders its opinion without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' motion is denied.[1]

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on the parties' complete diversity and an amount in controversy over $75,000.00. The Court exercises supplemental jurisdiction over Plaintiff's New Jersey state law claims under 28 U.S.C. § 1367.

1

I.  **Factual and Procedural History**[2]

Plaintiff John Nunnery, a California resident, attended Don Bosco Prepatory High School ("Don Bosco"), a private secondary school in Ramsey, New Jersey, from approximately September 1975 until June 1977. (Compl., ¶¶ 1, 5, 9.) Defendant Reverend Frank Nugent ("Nugent"), a New Jersey resident and Catholic priest, was ordained in or around 1956 and was subsequently assigned to work in various Catholic schools, including Don Bosco from 1974 through 1978. (Id. at ¶ 8.) Nugent is part of the Salesian Roman Catholic Order. (Id. at ¶ 6.) The Salesian Defendants constitute said order and are each New York non-profit corporations. (Id. at ¶ 4.)

During the time Nunnery attended Don Bosco, Nugent was the school's "Father Director." (Id. at ¶ 10.) According to the Complaint, in or around January or February of 1976, Nugent began sexually abusing Plaintiff. (Id. at ¶ 11.) Plaintiff alleges that such abuse included Nugent (1) providing him with alcohol and illegal narcotics; (2) inviting him on overnight trips; (3) touching his genitals, both over and under his clothing; (4) masturbating him; (5) performing oral sex on him; and (6) threatening him not to divulge the abuse to anyone. (Id.) In the summer of 1977, Plaintiff requested that his parents remove him from Don Bosco "[b]ecause of his abuse by [Rev. Nugent]." (Id. at ¶ 12.) In September 1977, Plaintiff enrolled in a public school in Ramapo, New Jersey. (Id. at ¶ 9.)

Having been introduced to alcohol and drugs by Nugent while at Don Bosco, Plaintiff claims he engaged in abuse of both types of substances "for many years subsequent to his

---

[2] The facts are culled from the Complaint and are taken as true for purposes of this motion. See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

[sexual] abuse." (Id. at ¶ 13.) His substance abuse, as stated in the Complaint, caused Plaintiff to repress his memories of the alleged sexual abuse. (Id.) When Plaintiff underwent counseling for marital problems in 2004, he still had no recollection of the molestation. (Id. at ¶ 14.) However, in May of 2005, when he received his 1976 Don Bosco yearbook in a mailing from his mother, the memories of the alleged abuse suffered at the hands of Rev. Nugent returned to Plaintiff upon viewing a picture of Nugent in the yearbook. (Id. at ¶ 15.) Plaintiff first disclosed the memories of the alleged abuse to his therapist on May 25, 2005, one week after receiving the yearbook. (Id. at ¶ 16.) Plaintiff further asserts that Nugent not only sexually abused him, but also other minor students and that the Salesian Defendants knew or should have known of these alleged activities. (Id. at ¶ 17.)

On May 3, 2007, Plaintiff filed a six-count complaint, alleging sexual battery in violation of N.J.S.A. 2A:61B-1 against Defendant Nunnery; negligence, breach of fiduciary duty, intentional infliction of emotional distress, and civil conspiracy against all Defendants; and respondeat superior liability for administrative negligence against the Salesian Defendants. Defendants responded by filing the instant motion on November 21, 2007, stating that Plaintiff's claims must be dismissed as they were not brought within the requisite statute of limitations and do not state a claim upon which relief can be granted.

## II. <u>Legal Standard</u>

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable

inferences in favor of the non-moving party.[3] See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000). However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997). Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. See In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. Ultimately, however, the question is not whether plaintiffs will prevail at trial, but whether they should be given an opportunity to offer evidence in support of their claims. Scheuer, 416 U.S. at 236. With this framework in mind, the Court turns now to Defendants' motion.

## III. Discussion

### A. The Child Sexual Abuse Act

It is well-settled that the law of the forum state, including its statute of limitations,

---

[3] In doing so, a court may look only to the facts alleged in the complaint and any accompanying attachments, and may not look at the record. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).

4

governs diversity actions. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Am. Cyanamid Co. v. Fermenta Animal Health, 54 F.3d 177, 180 (3d Cir. 1995). Thus, in examining Defendants' arguments, the Court will look to New Jersey law.

Under the Child Sexual Abuse Act ("CSAA"), "in any civil cause of action based on injury or illness based on sexual abuse, the cause of action shall accrue at the time of reasonable discovery of the injury and its causal relationship to the act of sexual abuse." N.J.S.A. 2A:61B-1(a) (emphasis added). After discovery of the causal connection, a plaintiff has two (2) years in which to bring said claim. Id. A plaintiff's awareness "both of the fact of the abuse and its causal relationship to [the] injury must exist in order for the statute of limitations to commence." D.M. v. River Dell Reg'l High Sch., 373 N.J. Super. 639, 645-46 (App. Div. 2004) (emphasis added); see Dattoli v. Yanelli, 911 F. Supp. 143, 146 (D.N.J. 1995) (noting that a cause of action under the CSAA accrues "when [plaintiff] discover[s] the causal connection between the sexual abuse and his injury"). Only once the plaintiff comprehends his injury "and that the injury is the fault of another" does the statute of limitations being to run. J.L. v. J.F., 317 N.J. Super. 418, 430 (App. Div. 1999) (citing Gantes v. Kason Corp., 145 N.J. 478 (1996)) (emphasis added).

Defendants assert that Nunnery's sexual battery claim against Rev. Nugent must be dismissed as (1) it does not fall within the CSAA's statute of limitations and (2) Plaintiff is not entitled to the tolling provisions set out in the statute. (Def. Br. at 4-5.) Under the "Third Circuit Rule," a defendant may raise a statute of limitations defense in a 12(b)(6) motion to dismiss – normally an affirmative defense to be pled in the answer – "only if the time alleged in the statement of a claim shows that the cause of action has not been brought in the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quotations omitted). If it

5

not "apparent on the face of the complaint" that the claim was not brought within the requisite limitations period, then the claim cannot be dismissed on that basis. Id.

Here, the Complaint states that Nunnery did not discover the causal connection between the alleged abuse and the injuries suffered until approximately May 25, 2005. (Compl., ¶¶ 15-16.) Plaintiff filed this action on May 3, 2007. Without discovery on this issue and a more developed factual record, the Court cannot state that it is "apparent on the face of the [C]omplaint" that Plaintiff's claim under the CSAA was not brought within the statute of limitations. Thus, the Court denies Defendants' motion to dismiss Count I of the Complaint against Defendant Nugent at this time.[4]

### B.     Plaintiff's Common Law Claims

Plaintiff has asserted common law causes of action for negligence, breach of fiduciary duty, intentional infliction of emotional distress, and conspiracy against all Defendants. The statute of limitations for all these claims is two years. See N.J.S.A. 2A:14-2 ("[e]very action at law for an injury to the person caused by the wrongful act, neglect or default of any person . . . shall be commenced within 2 years next after the cause of any such action shall have accrued"). However, the New Jersey Supreme Court has held that "a plain reading of the statutory language [of the CSAA] indicates that 'any civil action' includes any common-law claims based on conduct that falls within the definition of sexual abuse." Hardwicke v. Am. Boychoir Sch., 188

---

[4] The CSAA provides for the tolling of the statute of limitations based on "the plaintiff's mental state, duress by the defendant, or any other equitable grounds." N.J.S.A. 2A:61B-1(c). Since the Court determined that, at least at this stage, Plaintiff's Complaint comports with what is required by Rule 8 for purposes of N.J.S.A. 2A:61B-1(b), the Court need not address the issue of tolling here.

N.J. 69, 100 (2006). On this reasoning, the statute of limitations set out in the CSAA applies to any common law claims based on sexual abuse, see id., and Plaintiff's common law claims fall within the purview of the CSAA.

The CSAA creates two classes of parties liable for sexual abuse: active abusers and passive abusers. Hardwicke, 188 N.J. at 86. The former class are those that directly perpetrate the sexual abuse and the latter, "[a] parent, resource family parent, guardian or other person standing *in loco parentis* within the household who knowingly permits or acquiesces in sexual abuse by any other person." N.J.S.A. 2A:61B-1(a)(1). Under the language of the statute, then, "a passive abuser is (1) a person (2) standing *in loco parentis* (3) within the household." Hardwicke, 188 N.J. at 86.

The existence of the two categories compel the Court to consider Plaintiff's common law claims against Nugent and the Salesian Defendants separately. Furthermore, because Defendants assert separate grounds on which the emotional distress and conspiracy claims must be dismissed, the Court will only assess whether Plaintiff's negligence and breach of fiduciary duty claims withstand Defendants' motion in this section in this section.

### 1. **Against Defendant Nugent**

Because (a) Plaintiff's common law claims against Nugent are based on his allegations of sexual abuse, (b) the allegations in the Complaint paint Nugent as an "active abuser," and (c) the Court found that, on the present record, it is not apparent on the face of the Complaint that Plaintiff's claims fall outside the limitations period, the Court presently denies Defendants' motion to dismiss Plaintiff's negligence and breach of fiduciary duty claims against Defendant Nugent.

### 2. Against the Salesian Defendants

To determine whether <u>all</u> of Plaintiff's common law claims can stand against the Salesian Defendants, the Court must examine whether Don Bosco constitutes a passive abuser under the CSAA. Defendants argue that Don Bosco – as a non-boarding private school – does not, as it neither stood *in loco parentis* to the Plaintiff nor was within Plaintiff's household. (Def. Br. at 9.)[5] While the Court's analysis turns on whether Don Bosco only qualifies as a passive abuser, such a determination will apply to the Salesian Defendants as well based on a theory of vicarious liability, for purposes of this motion. <u>See</u> <u>Hardwicke v. Am. Boychoir Sch.</u>, 188 N.J. 69, 100-01 (2006) (holding that in instances of alleged sexual abuse, an employer may be held vicariously liable if the employer "delegated the authority to control the work environment to a supervisor and the supervisor abused the delegated authority"); <u>J.H. v. Mercer County Youth Detention Ctr.</u>, 396 N.J. Super. 1, 16-18 (App. Div. 2007); <u>cf.</u> Compl., Count V.

#### a. *In Loco Parentis*

First, the Court must determine whether Don Bosco stood *in loco parentis* to Plaintiff.[6] The New Jersey Supreme Court's decision in <u>Hardwicke</u> is particularly instructive. In finding that the American Boychoir School ("School") – a boarding school that "described itself as standing *in loco parentis* to its students in correspondence to parents, in school regulations, and

---

[5] The Court need not undertake an analysis of whether Don Bosco is a "person," as the New Jersey Supreme Court has held that a private school constitutes a "person" for purposes of the CSAA. <u>Hardwicke</u>, 188 N.J. at 90.

[6] The CSAA provides passive abusers with an affirmative defense if the party "was subject to, or placed in, reasonable fear of physical or sexual abuse by the [active abuser] so as to undermine the person's ability to protect the child." N.J.S.A. 2A:61B-1(a)(1). Defendants do not assert this defense.

8

in public statements" and as "substitute parents," 188 N.J. at 92 – was a passive abuser, the Supreme Court delineated the parameters of "*in loco parentis*." The Hardwicke Court accepted the literal definition of the term, taken from Black's Law Dictionary: "in the place of a parent" and "relating to, or acting as a temporary guardian or caregiver of a child, taking all or some responsibilities of a parent." Id. at 91. Further, it affirmed the lower court's finding that the School stood *in loco parentis* as the School had "provid[ed] students with necessary shelter, food, education, recreation and succor." Id. As part of its own examination of the School's stance with respect to its student, the New Jersey Supreme Court recounted that the School

> regulated the students' personal hygiene, monitored the cleanliness of their rooms, dictated the amount of money each student could have on campus, required students to write two weekly letters to friends of family, expected students to attend religious services when on campus during the weekend, provided transportation for recreational activities off school grounds, and disciplined students who violated [the school's] policies.

Id. at 92.

Here, Defendants contend that none of the latter factors are present as Don Bosco is merely a private school, not a private boarding school. Plaintiff points the Court to the United States Supreme Court for the proposition that any private school, not just a private boarding school like that in Hardwicke, stands *in loco parentis* with its students. In Veronia Sch. Dist. 47J v. Action, 515 U.S. 646 (1995), the Supreme Court explicitly stated, in dicta, that "[w]hen parents place minor children in private schools for their education, the teachers and administrators of those schools stand *in loco parentis* over the children entrusted to them." Id. at 654; see also Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 684 (1986) ("These cases recognize the obvious concern on the part of parents, and school authorities acting *in loco*

9

*parentis*, to protect children . . . ."); Morse v. Frederick, 127 S.Ct. 2618, 2630-33 (2007) (Thomas, J., concurring) (reviewing the long-standing use of the *in loco parentis* doctrine by schools – both public and private – to regulate its students' conduct).

The New Jersey Supreme Court likewise recognized the importance of the guardian role assumed by school officials in Frugis v. Bracigliano, 177 N.J. 250 (2003). In Frugis, the Supreme Court affirmed a directed verdict against defendant, the Elmwood Board of Education, for negligence and negligent supervision in connection with sexual abuse of students by a school principal. Prior to reviewing the issues before it, the Frugis Court set out the following framework:

> The law imposes a duty on children to attend school and on parents to relinquish their supervisory role over their children to teachers and administrators during school hours. While their children are educated during the day, parents transfer to school officials the power to act as the guardians of those young wards. No greater obligation is placed on school officials than to protect the children in their charge . . . .

Id. at 268 (emphasis added). Such language evidences the New Jersey Supreme Court's concurrence that all schools have a special duty to their students.

While Plaintiff does not delineate how Don Bosco provided the Hardwicke factors with respect to the *in loco parentis* requirement, he does so in discussing the "household" requirement: "There was shelter provided by the school itself, recreation in the school's gymnasium and out on the school grounds, food which was served in the school's cafeteria, and education and emotional support [*i.e.*, succor] by the school's teachers and administrators." (Pl. Br. at 32.) Defendants argue that "Don Bosco does not provide food, clothing, shelter, educational instruction, recreational activities and emotional support to its students as is characteristic of a . . . boarding school that provide[s] a school and a home" (Def. Br. at 11)

10

(emphasis in original), but fail to discuss the details of how and why it does not. Regardless, the United States Supreme Court has made clear that a private school – boarding or otherwise – does stand *in loco parentis* to its students, see Veronia, 515 U.S. at 646, and the New Jersey Supreme Court has set out a similar recognition, see Frugis, 177 N.J. at 268. For this reason, the Court finds that Don Bosco meets the *in loco parentis* requirement of the CSAA. See Hardwicke, 188 N.J. at 93.

### b. Household

The Hardwicke Court also set the bounds of what constitutes a "household." There, the New Jersey Supreme Court found that the School was indeed a "household" under the CSAA because it "provide[d] food, shelter, educational instruction, recreational activities and emotional support," id. at 94, and noted that residency is not required, id. at 93. The Court noted that the particular "qualities and characteristics of the [s]chool-student relationship" established the School as a "household" in Hardwicke. Id. As discussed above, Plaintiff contends that the "household" factors are present here: Don Bosco provided shelter, food, instruction, recreation and emotional support. (See Pl. Br. at 32.) The Court finds that the "qualities and characteristics" of the relationship between a private, parochial school and its students establishes Don Bosco as a "household" for purposes of the CSAA. See Hardwicke, 188 N.J. at 94.

### c. CSAA Statute of Limitations

Since the Court has concluded that Don Bosco is a person standing *in loco parentis* within a household, the Court will look to the provisions of the CSAA in determining whether the common law causes of actions alleged in the Complaint should be dismissed here. See

Hardwicke, 188 N.J. at 100. Because Plaintiff's common law claims against the Salesian Defendants are based on Nugent's alleged sexual abuse of Plaintiff and because the Court has found that the allegations in the Complaint should not be dismissed at this time based on the statute of limitations, the Court presently denies Defendants' motion to dismiss Plaintiff's negligence and breach of fiduciary duty claims against the Salesian Defendants.

### C.  Intentional Infliction of Emotional Distress

Defendants argue that Count IV of Plaintiff's Complaint alleging intentional infliction of emotional distress must be dismissed for failure to comply with Rule 12(b)(6). (Def. Br. at 12-13.) To state a claim for intentional infliction of emotional distress, the plaintiff must show that (1) defendant acted intentionally or recklessly, (2) the conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community, (3) defendant's conduct is the proximate cause of plaintiff's emotional distress, and (4) the distress was so severe that no reasonable person could be expected to endure it. See Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 366-67 (1988) (citing Restatement (Second) of Torts § 46).

In the Complaint, Plaintiff alleges that Defendants possessed knowledge of the abuse suffered by children "as a result of its clergy, employees and/or agents having previously failed to report child sexual abuse" and that they knew or should have known that such abuse would continue in the absence of any reporting to parents, children, or authorities. (Compl. ¶¶ 43-44.) To the extent Plaintiff is alleging Defendants' purposeful indifference to the safety and well-being of minor children, the Court will not dismiss Plaintiff's claim at this time because, construing the factual allegations in the Complaint as true, Plaintiff has arguably pled the

12

elements required to state a claim for intentional infliction of emotional distress against the Defendants. Cf. John Doe CS v. Capuchin Franciscan Friars, 520 F. Supp. 2d 1124, 1134 (E.D. Mo. 2007) (denying defendants' motion to dismiss plaintiff's intentional infliction of emotional distress claim where plaintiff pled that defendants had retained the abuser "in a position where he had access to students regardless of the knowledge that he abused students and without taking any action to prevent him f[rom] doing so again"); Bouchard v. New York Archdiocese, No. 04-9978, 2006 WL 1375232, at *6 (S.D.N.Y. May 18, 2006).

### D. Civil Conspiracy

According to Defendants, Plaintiff's conspiracy claim cannot withstand a motion to dismiss. (Def. Br. at 13-14.) Under New Jersey law, a plaintiff must allege facts stating that "two or more persons [were] acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong or injury upon another, and an overt act that results in damage." Banco Popular N.A. v. Gandi, 184 N.J. 161, 177 (2005) (quoting Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993)); see Farris v. County of Camden, 61 F. Supp. 2d 307, 330 (D.N.J. 1999). Liability will attach if the participants understand the general scheme, accept the terms of it – either explicitly or implicitly, and do their part to further it. Gandi, 184 N.J. at 177 (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)). The "gist of the claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.'" Morgan, 268 N.J. Super. at 364 (quoting Bd. of Educ. v. Hoek, 38 N.J. 213, 238 (1962)). However, a plaintiff cannot state a claim for civil conspiracy by making "conclusory allegations of concerted action," without including allegations of fact

regarding defendants' joint action. Abbot v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998); see Adams v. Teamsters Local 115, 214 Fed. Appx. 167, 175 (3d Cir. 2007).

Paragraph 57 of the Complaint expounds the alleged conspiracy among Defendants. Plaintiff maintains that Defendants were in agreement to conceal Nugent's sexual abuse of Plaintiff and other minor children. (See Compl., ¶ 57.) However, Plaintiff does not include facts to buttress these allegations. Count VI of the Complaint merely states that the Salesian Defendants – parties who owed a duty to Plaintiff to warn and protect him from the advances by Rev. Nugent –

> agreed or otherwise conspired to cover up incidents of sexual abuse of minors by Salesian priests and/or educators and to prevent disclosure, prosecution and civil litigation including, but not limited to: failure to report incidents of abuse to law enforcement or child protection agencies; denial of abuse [they] had substantiated; aiding criminal child molesters in evading detection, arrest and prosecution; allowing criminal child molesters to cross state and international borders for purposes of gaining access to uninformed parents whose innocent children could be sexually abused; failure to warn; and failure to seek out and redress the injuries its priests and/or educators had caused.

(Id.) Although Plaintiff does not provide further details regarding the alleged conspiracy, at this time, without discovery, the nature of the allegations and the secrecy of such conduct, if true, would limit the particulars with which said allegations can be pled. In addition, the allegations provide sufficient information such that they cannot be characterized as the type of "bald assertions" and "legal conclusions draped in the guise of factual allegations" that fail to give Defendants the requisite notice of precisely the actions on which Plaintiff bases his claim. Because the allegations in Count VI sufficiently meet the pleading requirements of Rule 8, the Court denies Defendants' motion on this issue at this time.

## IV. Conclusion

For the aforementioned reasons, Defendants' motion to dismiss the Complaint is denied.

An appropriate order accompanies this opinion.

Dated: April 15, 2008

_____
Jose L. Linares
United States District Judge